# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MONIKA GADSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 2:13-CV-105-VEH |
| | ) |
| **STATE OF ALABAMA** | ) |
| **DEPARTMENT OF** | ) |
| **CORRECTIONS,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

**I.   Introduction**

Plaintiff Monica Gadson ("Ms. Gadson") initiated this job discrimination case arising under Title VII and 42 U.S.C. § 1981 against the State of Alabama Department of Corrections (the "DOC") on January 16, 2013. (Doc. 1). On June 24, 2013, the DOC filed a Motion To Dismiss (Doc. 9) (the "Motion").

On July 26, 2013, the court granted DOC's Motion, but also gave Ms. Gadson the right to replead her <u>discriminatory impact claim in a plausible manner</u> no later than August 15, 2013. (Doc. 13 at 9). Ms. Gadson timely filed an amended and restated complaint (Doc. 15) on August 15, 2013.

On August 26, 2013, the DOC filed a Motion To Dismiss Plaintiff's *Amended*

Complaint (Doc. 15) (the "Second Motion"). Ms. Gadson has filed no opposition to the Second Motion, which under Appendix III to the court's uniform initial order was due on September 9, 2013. (*See* Doc. 5 at 23 ¶ B.2 ("The opponent's responsive brief shall be filed no later than fourteen (14) **calendar** days thereafter.")). Accordingly, the Second Motion is now ready for disposition, and, for the reasons explained below, is due to be granted.

## II.   Standards

### A.   Rule 12(b)(6)

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also* Fed. R. Civ. P. 8(a).

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 545 (quoting *Conley*, 355 U.S. at 47). However at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

### B.  Ms. Gadson's Failure to Oppose

Ms. Gadson's failure to file any opposition does not automatically mean that the Second Motion is due to be granted. As such an omission was explained by Judge

Steele in *Branch Banking and Trust Co. v. Howard*, No. 12–0175–WS–N, 2013 WL 172903, *1 (S.D. Ala. Jan. 16, 2013):

> As noted, Churchill and Howard elected not to be heard in response to BB & T's Amended Motion to Dismiss. Notwithstanding that omission, BB & T (as Rule 12(b)(6) movant) bears the initial burden of demonstrating that it is entitled to dismissal of the counterclaims. Churchill's and Howard's lack of response to the Rule 12(b)(6) Motion does not trigger the kneejerk granting of such Motion on an abandonment theory. *See Gailes v. Marengo County Sheriff's Dep't*, 2013 WL 81227, *5 (S.D. Ala. Jan. 4, 2013) ("the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss"). Rather, it remains BB & T's burden as movant to establish its entitlement to relief under Rule 12(b)(6). In light of these circumstances, the Court scrutinizes BB & T's Motion to Dismiss in accordance with the following legal standard: "the Court will review the merits of the [movant]'s position and, if it is clearly incorrect or inadequate to satisfy the [movant]'s initial burden, will deny the motion despite the [nonmovant]'s failure to respond. If, however, the [movant]'s presentation is adequate to satisfy its initial burden, the Court will not deny the motion based on arguments the [nonmovant] could have made but by silence elected not to raise." *Id.*

*Branch Banking*, 2013 WL 172903, *1 (footnotes omitted).

### III. Analysis

In its Second Motion, the DOC maintains that several grounds support a dismissal of Ms. Gadson's amended complaint with prejudice. One of the DOC's contentions is:

> Plaintiff's Amended Complaint has also failed to plead any conceivable adverse employment action that would bring her under Title VII jurisdiction. The allegation that Gadson was told she would (in the

4

> future) lose compensation if she continued to disregard the dreadlock prohibition is insufficient. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257 (1998). The Plaintiff has continued to work with no dismissal, demotion, or decrease in pay with the accommodation that she cover her dreadlocks.

(Doc. 15 ¶ 5).

The court has studied Ms. Gadson's amended pleading which contains one count and agrees with the DOC that she has not plausibly pled a tangible employment action that would support her disparate impact theory of race discrimination connected to her dreadlocks hairstyle. As the United States Supreme Court has summarized the meaning of a <u>tangible</u> employment action:

> The concept of a tangible employment action appears in numerous cases in the Courts of Appeals discussing claims involving race, age, and national origin discrimination, as well as sex discrimination. Without endorsing the specific results of those decisions, we think it prudent to import the concept of a tangible employment action for resolution of the vicarious liability issue we consider here. <u>A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits</u>. *Compare Crady v. Liberty Nat. Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (C.A.7 1993) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation"), *with Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (C.A.7 1994) (a "bruised ego" is not enough), *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 887 (C.A.6 1996) (demotion without change in pay, benefits, duties, or prestige insufficient), *and Harlston v. McDonnell Douglas Corp.*, 37

> F.3d 379, 382 (C.A.8 1994) (reassignment to more inconvenient job insufficient).
>
> When a supervisor makes a tangible employment decision, there is assurance the injury could not have been inflicted absent the agency relation. A tangible employment action in most cases inflicts direct economic harm.

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761-62, 118 S. Ct. 2257, 2268-69, 141 L. Ed. 2d 633 (1998) (emphasis added).

The only allegations that Ms. Gadson has made regarding any arguable employment-related repercussions that she has had to endure because of her dreadlocks hairstyle are:

> 17. On or about December 1, 2010, Plaintiff was sent to the Warden's office and was suspended because her hair was styled in dreadlocks.
>
> 18. Plaintiff returned to work on December 15, 2010, with her dreadlocks uncovered. She was informed by the Warden if she failed to comply with policy she would lose compensation.

(Doc. 14 ¶¶ 17, 18).

Thus, nowhere does Ms. Gadson assert that she has suffered financially as a result of her suspension for violating the DOC's hairstyle policy. Further, Ms. Gadson has not offered and this court has been unable to locate any binding authority which suggests that a reasonable jury could conclude that a one-time suspension with pay, coupled with an unfulfilled future threat of lost compensation if Ms. Gadson

failed to comply with the DOC's hairstyle policy, is sufficient to constitute a tangible employment action in support of a disparate impact theory under Title VII.[1]

## IV. Conclusion

Accordingly, in the absence of an amended pleading that plausibly states a disparate impact claim and, consistent with the unambiguous warning set forth in this court's prior ruling, the DOC's Second Motion is due to be granted, and Ms. Gadson's lawsuit is due to be dismissed with prejudice. (*See* Doc. 13 at 9 ("[T]he failure of Ms. Gadson to file an amended pleading that complies with this order will result in a dismissal of her entire case with prejudice.")). The court will enter a separate final judgment order.

**DONE** and **ORDERED** this 17th day of September, 2013.

*/s/ VEHopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[1] Section 1981 does not encompass disparate impact claims at all. *See Cooper v. Southern Co.*, 390 F.3d 695, 723 (11th Cir. 2004) ("The plaintiffs also assert claims under Section 1981, which, unlike Title VII, only provides a cause of action for claims involving <u>intentional</u> discrimination." (emphasis added) (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S. Ct. 3141, 3150, 73 L. Ed. 2d 835 (1982)), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457, 126 S. Ct. 1195, 1197, 163 L. Ed. 2d 1053 (2006)).